[Civ. No. 10741. First Appellate District, Division Two.—September 16, 1938.]

C. ALBERT HASTY, a Minor, etc., et al., Respondents, v. G. T. MARSH & COMPANY (a Corporation) et al., Appellants.

434

Alfred B. Weiler for Appellants.

George K. Ford and Gus K. Burgren for Respondents.

STURTEVANT, J.—On December 22, 1936, C. Albert Hasty, a boy eight years of age, was riding in a school bus going from his home to Charing Cross school. The bus was traveling along Hyde Street in a southerly direction toward

Post Street. At about the same time George R. Marsh was driving a light Ford truck which was proceeding easterly on Post Street. In the intersection of those two streets a collision occurred and C. Albert Hasty was badly injured. His father, acting as guardian *ad litem,* commenced this action to recover damages. The jury returned a verdict awarding the minor damages in the sum of $5,000 and awarding his father damages in the sum of $1,019. From the judgment entered on the verdict the defendants G. T. Marsh & Company, a corporation, and George R. Marsh appeal. The defendants claim the trial court erred in instructing the jury and that the award of $5,000 in favor of the minor was excessive. Those two points will be discussed in the order stated.

■ As to the first point the defendants state that the question involved is as follows: Is it error to instruct the jury that the operation of an automobile at a speed which exceeds the limits specified in the law is *prima facie* unlawful, and yet to leave the jury to guess what limits of speed are so specified? The plaintiffs contend that the question as stated is not involved in the record. In making that contention we think the plaintiffs' position is fully sustained by the record. The defendants' contention is based on the following facts: They asked an instruction that was worded as follows: (Lettering and parentheses ours.)

"(a) The Motor Vehicle Code sets forth what is there termed a basic speed law, which reads as follows:

"'No persons shall drive a vehicle upon a highway at a speed greater than is reasonable or prudent having due regard for the traffic on, and the surface and width of, the highway, and in no event at a speed which endangers the safety of persons or property.'

"(b) The Code then sets out what are termed *prima facie* speed limits. That provision reads in part as follows:

"'The speed of any vehicle upon a highway not in excess of the limits specified in this section is lawful unless clearly proved to be in violation of the basic rule declared in Section 510 hereof,' which is the section I have just read to you.

"(c) The Motor Vehicle Code then proceeds as follows:

"'The speed of any vehicle upon a highway in excess of any of the limits specified in this section is *prima facie*

unlawful unless the defendant establishes by competent evidence that any said speed in excess of said limits did not constitute a violation of the basic rule declared in Section 510 hereof at the time, place and under the conditions then existing.'

"The *prima facie* limits referred to so far as this case is concerned are as follows:

" 'Fifteen miles per hour when traversing any intersection (of highways if during the last one hundred feet of his approach to such intersection the driver does not have a clear and unobstructed view of such intersection and of any traffic upon all of the highways entering such intersection for a distance of one hundred feet along all such highways, except upon a through highway or at traffic-controlled intersections, in which event in a business or residence district the district speed shall apply and elsewhere the speed shall be thirty miles per hour.'

"The *prima facie* limit referred to in a business district is twenty miles an hour. I instruct you that under the evidence in this case the district in which the accident in question occurred is a business district.)

"It is also provided in the Motor Vehicle Code that in any civil action proof of speed at a particular time and place in excess of the *prima facie* limits that I have just explained to you shall not establish negligence as a matter of law, but in all such actions it shall be necessary to establish as a fact that the operation of a vehicle at such excess speed constituted negligence.

"Therefore, in this case, even though you should find from the evidence that the rate of speed of either of the automobiles involved, at the time and place of the collision exceeded the *prima facie* limits provided in the Code, that fact does not prove as a matter of law that either driver was negligent. Before you can hold either driver negligent, it must be proved as a fact by the evidence introduced that the operation of such automobile at such excess speed constituted negligence.''

Having read down to and including ''fifteen miles per hour when traversing any intersection'', the trial court paused and stated, ''Let me see, I will withdraw that, the latter part of the instruction. So that the jury will understand, the part I just read is not to be considered by them.'' The

defendants assert that such action was in effect to instruct as follows: "If you find that either defendant exceeded the speed limits provided in the Motor Vehicle Code, there will be a *prima facie* presumption that that defendant was negligent. What speed limits are so provided in that section, I leave to your imagination. But remember, having decided that either machine exceeded the limit which you have so guessed, you will hold that there is a *prima facie* presumption that the driver of that machine was driving at an unlawful speed." We find no merit in that contention. The instruction as offered contained several separate propositions, (a), (b) and (c). The first was based upon section 510 and all others on section 511 of the Vehicle Code. When the judge presiding in the trial court made the remark just quoted above, we think it is clear he was addressing himself to the divisions we have marked (b) and (c), both of which were based upon the provisions of section 511 of the Vehicle Code. In other words, the trial court was instructing the jury solely on the law as stated in section 510 and was acting under the assumption that the provisions of section 511 of the Vehicle Code were not involved in the action. That conclusion is supported by the fact that the trial court's remark is reasonably susceptible of such meaning. ▮ Furthermore there was no evidence introduced on which the jury could have made a finding as to the speed of either automobile. Moreover, after the jury was selected each party made an opening statement. Neither party claimed either car was driven at an excessive speed. Finally the trial court very fully and completely instructed the jury, but did not instruct on the *prima facie* limits of speed of either car. That is to say, *prima facie* limits of speed were not involved in the theory of either party during the trial nor do they appear in the instructions given by the trial court.

We said above there was no evidence introduced on which the jury could have made a finding as to the speed of either car. That statement rests on these facts. The two drivers were the only witnesses who gave any testimony on the subject. George R. Marsh was driving the truck. He testified as to the movements of the bus: "I observed its speed but I can't say how fast it was going." Richard Hurst was driving the bus. He testified in effect: "When I saw the

Marsh car I did not make any approximation, definite approximation, of the speed at that time while I was in the car." Intimating that he did make an approximation in reasoning back from subsequent events. Conceding there is some evidence from which the jury could have made some calculations and on which it could have based some inference, such inference, if made, would have been against these defendants and therefore we are unable to say any prejudicial error was committed. The defendants make the statement that "the speed of the school bus could have been computed by the jury at any rate from nine to thirty-five miles an hour" and defendants' car "at various exact figures". The record does not sustain either statement.

■ In contending that the verdict was excessive, defendants state: "These injuries—a scar to be eliminated, if desired, a tooth to be filled, and a pain and suffering involved in the treatment undergone—are the basis of a verdict of $5000. Appellants respectively submit that a verdict of $1000 might be justified but that $5000 is grossly excessive." If said statement were full and complete something might be said in favor of it, but it is quite incomplete. The child's condition at the time Dr. Sooy, the surgeon, commenced his treatments was described by the latter as follows: "The child had bled rather profusely, was very pale, quite badly shocked, probably from pain and loss of blood; he was in the operating room when I got there, and his teeth were protruding through his upper lip; there was a cut on the right side of the face that started at the bridge of his nose, down across the nose and took off the right wing of the nose, ran back into this crease in the right upper lip—down to the bone, and across the cheek at almost to the level of the jawbone. The nose was open so the air was coming in, blowing his blood all over. He had another cut starting from the left nostril, running down across the lip, through which his teeth protruded. There was another cut under his right eye, over his right eye, and one under the left temple. The one on the left temple and the one on the right eyebrow, and the one under the right eye were minor cuts; the other two were very deep, the one through the lip and this one went right to the bone, and it was cut with glass— at least I assumed it was, and it went right straight to

the bone as I have described it." The cuts were knitted and healed, but a small piece of the right wing of the nose was lost. One tooth was broken. The scars have received, and are receiving, the best of medical care but Dr. Sooy testified: "Scars can be refined but never be taken away; they can be made less noticeable; the child will always have a scar in that side of his face because the muscles were completely cut through to the bone and the scar is not alone in the child's face but runs through to the bone; because of that there has been a contraction of the muscles through this scar and that is why the scar is so noticeable and that cannot be eliminated." We think it is quite clear that it may not be said the verdict of the jury indicates at first blush or at all that the jury were influenced by passion, prejudice or corruption.

The judgment is affirmed.

Nourse, P. J., and Spence, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on October 15, 1938, and an application by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on November 14, 1938.